JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **BERNARD MITCHELL,**<br><br>**Plaintiff,**<br>**v.**<br><br>**DEUTSCHE BANK NATIONAL TRUST COMPANY,**<br><br>**Defendant.** | **Case No.: SACV 15-01307-CJC(JCGx)**<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE** |

## I. INTRODUCTION

Plaintiff Bernard Mitchell brings this action against Defendant Deutsche Bank National Trust Company ("Deutsche Bank") for violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"). Plaintiff originally filed his complaint in August

2015, and since then the parties have engaged in significant motion practice. Before the Court are four motions: Deutsche Bank's motion to dismiss the case for failure to state a claim, (Dkt. 11), Plaintiff's motion to strike Deutsche Bank's motion to dismiss and for Rule 11 sanctions, (Dkt. 26), Deutsche Bank's motion for Rule 11 sanctions, (Dkt. 31), and Deutsche Bank's motion to transfer the case to the Northern District of California, (Dkt. 33). For the following reasons, Deutsche Bank's motion to transfer, (Dkt. 33), is GRANTED.[1]

## II. BACKGROUND

This is the latest chapter in a considerable history of litigation between Plaintiff and Deutsche Bank relating to Plaintiff's refinancing of a home mortgage loan in 2005 and the subsequent foreclosure of his home. On May 3, 2007, Plaintiff obtained a $648,000 loan from IndyMac Bank, FSB secured by a Deed of Trust on his property located at 2132 Longview Way in San Leandro, California. Plaintiff subsequently stopped making payments on the loan, and OneWest Bank, FSB, which had purchased the loan from the FDIC as a receiver after the FDIC closed IndyMac, foreclosed. Deutsche Bank purchased the subject property at the trustee's sale.[2] A summary of the ensuing litigation is below.

### 1. *Mitchell I*

Plaintiff's original lawsuit against Deutsche Bank was filed in October 2010 in federal court and was assigned to Judge Jeffrey White of the Northern District of

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for Monday, November 9, at 1:30 p.m. is hereby vacated and off calendar.

[2] This factual summary is derived from an order in an earlier iteration of this litigation. *Mitchell v. OneWest Bank, FSB, et al.*, No. 10-cv-04207-JSW (N.D. Cal. Feb. 22, 2011.)

California. *Mitchell v. Deutsche Bank Nat'l Trust Co.*, No. 10-cv-04207-JSW (N.D. Cal.) ("*Mitchell I*"). The *Mitchell I* complaint asserted federal claims under the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, as well as a number of state law claims. On February 22, 2011, Judge White dismissed Plaintiff's federal claims with prejudice and declined to exercise supplemental jurisdiction over the remaining state claims. (*Mitchell I* Dkt. 20.) Plaintiff appealed the dismissal, and the Ninth Circuit affirmed. (*Mitchell I* Dkt. 55.)

**2. *Mitchell II***

Plaintiff, along with S. Raye Mitchell (Plaintiff's counsel here), subsequently filed a second complaint in federal court against Deutsche Bank and others relating to the foreclosure of his home, alleging state law claims as well as a federal claims under 42 U.S.C. § 1983 and 18 U.S.C. § 1962(c). *Mitchell v. Routh Crabtree Olsen, P.S. et al.*, 11-cv-03577-JSW (N.D. Cal.) ("*Mitchell II*"). *Mitchell II* was initially assigned to a different district court judge, but after Judge White determined that *Mitchell II* was related to *Mitchell I*, the case was reassigned to him. (*Mitchell II* Dkt. 25.) Judge White later dismissed the federal claims as to two defendants in *Mitchell II* and declined to exercise supplemental jurisdiction over the corresponding state claims. (Dkt. 60.) Plaintiff then filed a notice of voluntary dismissal as to the remaining defendants, dismissing without prejudice all claims against Deustche Bank. (*Mitchell II* Dkt. 62.)

**3. *Mitchell III***

On December 6, 2011, Plaintiff and S. Raye Mitchell filed a third complaint in federal court. *Mitchell v. Deutsche Bank Nat'l Trust Co., et al.*, No. 11-cv-06374 (N.D. Cal.) (*Mitchell III*). However, they voluntarily dismissed the case on February 16, 2012, before any defendant had responded. (*Mitchell III* Dkt. 5.)

**4. *Mitchell IV***

In July 2012, Plaintiff—again along with Ms. Mitchell—filed another complaint against Deutsche Bank and others relating to the foreclosure at issue, this time in Alameda County state court. The defendants removed to the Northern District of California on October 29, 2012, and the case was subsequently assigned to Judge White after a determination that it was related to *Mitchell I* and *Mitchell II*. *Mitchell v. Regional Trust Servs. Corp., et al.*, No. 12-cv-05547-JSW (N.D. Cal.) ("*Mitchell IV*"). The *Mitchell IV* complaint alleged federal claims under 18 U.S.C. § 1983 and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 ("RESPA"), as well as a number of state law claims. (*Mitchell IV* Dkt. 1.) After Plaintiff and Ms. Mitchell filed an amended complaint in November 2012, Judge White dismissed the federal claims and remanded the state law claims to state court. (*Mitchell IV* Dkt. 42.)

**5. *Mitchell V***

On December 4, 2012, Plaintiff and Ms. Mitchell filed another complaint in Alameda Superior Court relating to the foreclosure of Plaintiff's home ("*Mitchell V*"). They then have apparently dismissed that complaint, but there is a cross-complaint pending that has now been consolidated with *Mitchell IV*. (*See* Dkt. 33 at 5.)

**6. *Mitchell VI***

On March 21, 2014, Plaintiff, along with four other entities, filed another related complaint in Alameda Superior Court. (*See* RJN Ex. T ["*Mitchell VI*"].)[3] That case has

[3] Deutsche Bank submitted a request for judicial notice that attached a large volume of former filings and opinions in related cases. (Dkt. 12.) The attached materials are not subject to reasonable dispute and are appropriate for judicial notice. *See U.S. ex. rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts, both

apparently been stayed by the state court pending the resolution of *Mitchell IV* and *Mitchell V*. (*See* Dkt. 33 at 5.)

**7. Various Bankruptcy Petitions**

Plaintiff has also filed at least four bankruptcy petitions, either under his name or under an alias. (*See* RJN Exs. U; W; Y; AA.) The first three petitions were dismissed. (*See* RJN Exs. V; X; Z.) In proceedings held pursuant to the fourth petition, Deutsche Bank moved for *in rem* relief as to the property at issue here, and the Bankruptcy Court granted that relief, finding that the filing of Plaintiff's latest bankruptcy petition was "part of a scheme to delay, hinder, or defraud creditors." (RJN Ex. AB at 3.)

**8. The Present Litigation**

Plaintiff filed this latest case—*Mitchell VII*—on August 16, 2015 against Deutsche Bank, alleging violations of TILA. (Dkt. 2 ["Compl."].) The Complaint alleges the following facts: Plaintiff executed a loan modification with IndyMac on May 5, 2007. (Compl. ¶¶ 10–11.) IndyMac provided Plaintiff with a notice that gave Plaintiff the right to cancel the modification until May 7, 2007. (*Id.* ¶ 11.) On May 6, 2007, Plaintiff changed his mind about the loan modification and executed and mailed a Notice of Cancellation to IndyMac at its address in Rancho Cordova, California, then drove to "Southern California" to hand-deliver a second copy of the Notice of Cancellation to IndyMac representatives.[4] (*Id.* ¶ 13.) IndyMac confirmed receipt of the Notice of

---

within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."). Deutsche Bank's request is therefore GRANTED.

[4] This particular factual allegation is confusing because Plaintiff alleges that he hand-delivered a copy of the Notice of Cancellation to the "same address" as the address to which he sent the Notice, which he reports as being located in Rancho Cordova, California. Rancho Cordova is in Sacramento County, not Southern California. A declaration attached to this motion avers that Plaintiff actually hand-delivered

Cancellation and told Plaintiff it would rescind the loan, but funds for the loan were subsequently disbursed to Plaintiff and third parties, with IndyMac informing Plaintiff that he was being granted a "new and different loan . . . at a substantially lower rate and [with] better terms." (*Id.* ¶¶ 15–16.) IndyMac then began billing Plaintiff for a loan with a different number than that of the allegedly rescinded loan. (*Id.* ¶ C-1.) Plaintiff argues that the foreclosure of his home was wrongful because Deutsche Bank, who now owns the home, failed to honor Plaintiff's TILA rescission or because the second loan failed to meet TILA disclosure requirements. Plaintiff seeks statutory damages, declaratory relief, attorneys' fees, and an order restoring possession of the property at issue. (*Id.* at 52–53.) For its part, Deutsche Bank disputes that the original loan was ever rescinded, argues that the difference in loan numbers is simply a result of a single loan being moved between servicers, and argues that in any event, Plaintiff's claims are all barred by collateral estoppel, *res judicata*, and the statute of limitations. (*See* Dkt. 33 at 1–2.)

## III. DISCUSSION

A district court has discretion to transfer a civil action "for the convenience of parties and witnesses, in the interest of justice" to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under section 1404(a), two findings are required for proper transfer: (1) the transferee district court is one where the action might have been brought, and (2) the convenience of the parties and witnesses and the interest of justice favor transfer. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). A court may consider multiple factors in determining whether the interests of justice favor transfer, including: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts

---

copies of the Notice to IndyMac facilities in Rancho Cordova *and* somewhere in Southern California, but this version of events is at odds with the allegations in the Complaint. (*See* Dkt. 40 ¶ 2.)

relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof," in addition to the relevant public policy of the forum state. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). The moving party bears the burden of demonstrating that transfer is appropriate. *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). District courts have broad discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration, *Jones*, 211 F.3d at 498, and must undertake a "flexible and individualized analysis" of relevant factors, *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Here, the parties do not dispute that this action could have been brought in the Northern District of California, since the Complaint asserts federal claims and Deutsche Bank does not assert that it is not subject to personal jurisdiction in the Northern District (indeed, it has litigated against Plaintiff in the Northern District for several years now). Additionally, venue is proper in the Northern District because "a substantial part of the events or omissions" giving rise to Plaintiff's claims against Deutsche Bank occurred in the Northern District. *See* 28 U.S.C. § 1391(b)(2). The property in question is located there, Plaintiff apparently executed the loan documents there, and Deutsche Bank purchased the property at a foreclosure sale there.

The interests of justice also weigh heavily in favor of transfer in this case. As an initial matter, courts in the Northern District have already spent a significant amount of judicial resources resolving related claims between these parties. There is little question that transferring this case will serve judicial economy and prevent the duplication of efforts. Seeing as Judge White has already ruled on a number of substantive motions related to Plaintiff's efforts to reverse the foreclosure of his home, there is little need for

another federal court to familiarize itself with the (considerable) record in this case in order to rule on these related statutory claims.

Most importantly, forum-shopping concerns strongly suggest that the interests of justice will be served by transfer. Normally a plaintiff's choice of forum merits significant deference on a motion to transfer. However, when "a plaintiff does not reside in the [selected] forum, the Court may afford plaintiff's choice considerably less weight." *Vu. v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009). This is because concerns of forum-shopping are potentially present when a plaintiff pursues litigation outside his home district. Such concerns frequently merit transfer. *See Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) ("If there is any indication that [a] plaintiff's choice of forum is the result of forum shopping, [the] plaintiff's choice will be accorded little deference."); *see also Madani v. Shell Oil Co.*, No. C07-04296 MJJ, 2008 WL 268986, at *3 (N.D. Cal. Jan. 30, 2008) (granting motion to transfer because of a "high likelihood that [plaintiffs' counsel were] attempting to forum shop" and noting that "[d]iscouraging forum-shopping provides a strong reason to transfer"). This is particularly true when it appears that a plaintiff is avoiding a forum because of prior unfavorable rulings. *See Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. C 03-3711 MHP, 2003 WL 22387598, at *5 (N.D. Cal. Oct. 14, 2003) ("[E]vidence of [a] plaintiff's attempt to avoid a particular precedent from a particular judge weighs heavily in the context of [the interests of justice] and would often make the transfer of venue proper.").

The record in this case convinces the Court that there is a significant likelihood that Plaintiff is indeed attempting to forum-shop. Each of the previous related cases was filed in the Northern District or in a state court within the Northern District. Only after repeated unfavorable rulings and dismissals there—and only after multiple related cases were all assigned to Judge White—did Plaintiff choose to shift course and initiate

litigation here in the Central District. Indeed, Plaintiff makes little secret of his desire to avoid litigating before Judge White, alleging that Judge White made a "number of administrative and judicial errors" in the previous cases relating to this foreclosure and asserting that Defendants are seeking to "judge shop" because Defendants believe Judge White is "predisposed to their scheme." (Opp'n at 3.)[5] Moreover, although Plaintiff argues at great length why it is now more convenient for him and his counsel to litigate in the Central District, he fails to adequately explain why that has not been true throughout this litigation, particularly because his home was sold in foreclosure in August 2010, before any of the six prior actions were filed in Northern California. (Dkt. 33 at 3.) The Court is left with the clear sense that Plaintiff, after having failed to successfully reverse the foreclosure through litigation in the Northern District, has now decided to try his hand in the Central District. Such forum-shopping is entirely inappropriate and merits transfer.

Plaintiff's arguments are not to the contrary. Applying the *Jones* factors, he argues that litigation will actually be more convenient and less expensive for the parties in the Central District. But to begin with, most of the *Jones* factors cut against Plaintiff. For example, *Jones* teaches that "the location where the relevant agreements were negotiated and executed," "the contacts relating to the plaintiff's cause of action in the chosen

---

[5] The merits of Plaintiff's position aside, Plaintiff's briefing in this case represents a wholesale abandonment of the professional norms of civility and decorum. His opposition characterizes Defendants as utilizing a "litigation lynching scheme" and contends that Defendants believe Judge White will be the "hanging judge" in this case who will "string-up the Plaintiff and his counsel." (Dkt. 42 at 1.) Plaintiff terms Defendants' filings a "dirty bomb" which attempts to use the Federal Rules of Civil Procedure as "weapons of mass destruction." (*Id.*) He accuses defense counsel of being motivated by "racial and gender animus that bleeds off [counsel's] unspoken words." (Dkt. 42 at 13.) Remarkably, Plaintiff's counsel's declaration is even worse. She derides Judge MacLaren, who presided over a related state court case, as "lack[ing] cultural competency." (Dkt. 39 ¶ 3.) She accuses Defendants' counsel of "perpetuat[ing] race and gender stereotypes," including that "women and Black women must cower in the wake of our male and white male opposition." (*Id.* ¶ 6.) In communication with Defendant's counsel, she characterizes Defendant's legal approach as being "like the Nazi Germany Gestapo tactics organized for its terrorist methods directed against those who refused submission to the notion of white supremacy." (Dkt. 39 Ex. B at 4.) Statements like these are entirely beyond the pale.

forum" and "the ease of access to sources of proof" are all relevant to discretionary transfer. *Jones*, 211 F.3d at 498–99. But each of these factors points *away* from the Central District. None of the relevant transactions here—the signing of the loan modification agreement, the alleged rescission, and the foreclosure sale—occurred in the Central District of California. Instead, the Northern District bears the clearest connection the causes of action here. (That is, of course, presumably why Plaintiff has chosen to litigate there for five years now.) To be sure, a few *Jones* factors may cut against transfer—Deutsche Bank's presence in the Central District, for example, is relevant to "the respective parties' contacts with the forum." *Id.* And Plaintiff asserts in a declaration that he has "family and friends willing to offset the cost of lodging food, car rental, and even office space" for his counsel in Southern California. (Dkt. 40 ¶ 15.) These costs speak to the criterion of "the differences in the costs of litigation in the two forums." *Jones*, 211 F.3d at 498–99. But Plaintiff offers no explanation for why he did not litigate these cases in the Central District from the beginning if it would be so much cheaper to do so. His allegations about relative litigation costs therefore fail to allay the Court's concerns about forum-shopping. Given most of the *Jones* factors favor transfer and given Plaintiff is clearly attempting to forum shop, this motion to transfer is an easy one for the Court to resolve. The interests of justice and fairness demand transfer to the Northern District.

//

//

//

//

//

//

//

//

## IV. CONCLUSION

For the foregoing reasons, Deutsche Bank's motion to transfer venue to the Northern District of California is GRANTED. The parties' other three motions will be resolved by that court.

DATED: October 29, 2015

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE